UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
02 AUG -6 PM 3:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

GAYNELL BLALOCK, and the class she )
seeks to represent, )
)
Plaintiffs, )
)
vs. )   Civil Action No. CV-00-S-2668-NE
)
WASTE INDUSTRIES, INC., )
)
Defendant. )

ENTERED
AUG 6 2002

# MEMORANDUM OPINION

This is an action in which plaintiff, Gaynell Blalock, contends that defendant discriminated against her, and a class of similarly-situated females, on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. Plaintiff has filed a motion for class certification, seeking to certify a class of "all female applicants, potential applicants, and deterred applicants for employment at Waste Industries, Inc. . . . from September 20, 1999 to the present, who have been or will be adversely affected by the policies, practices, and procedures utilized by Waste Industries in the selection of truck drivers because of their sex."[1] Plaintiff, who has alleged both disparate treatment and disparate impact claims, seeks to certify the class as to her "claims for classwide injunctive relief, declaratory relief and disparate impact claims."[2]

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. As the Supreme Court has stated generally, the class-action device created by that Rule

> was designed as an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on

---

[1] Doc. no. 22.

[2] *Id.*

> questions of law applicable in the same manner to each member of the class. For in such cases, the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155, 102 S. Ct. 2364, 2369, 72 L. Ed. 2d 740 (1982) (internal citations and quotations omitted). "An individual litigant seeking to maintain a class action under Title VII must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation specified in Rule 23(a). These requirements effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* at 156, 102 S. Ct. at 2369-70.

A district court is to make the determination of whether an action should proceed as a class action "[a]s soon as practicable after the commencement of an action brought as a class action." Fed. R. Civ. P. 23(c)(1). "The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23." *Culpepper v. Inland Mortgage Corp.*, 189 F.R.D. 668, 669 (N.D. Ala. 1999) (quoting *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)).

The initial burden of persuading the court that a class should be certified rests with the advocate of the class. *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975).[3] "A class action may be maintained only when it satisfies all the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997); *see also Franze v. Equitable Assurance*, No. 01-11575, 2002 WL 1482778, at *2 (11th Cir. July 11, 2002); *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1345-47 (11th Cir.

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

2001). In the instant case, plaintiff asks the court to certify a class under Rule 23(a) and either 23(b)(2) or 23(b)(3). Those provisions read as follows:

> (a) PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> . . .
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23.

A district court is not to conduct a preliminary inquiry into the merits of a suit when deciding whether it may be maintained as a class action. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178, 94 S. Ct. 2140, 2152-53, 40 L. Ed. 2d 732 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (quoting *Miller v.*

*Mackey International*, 452 F.2d 424, 427 (5th Cir. 1971)). However, a court may look beyond the allegations of the complaint in assessing whether a motion for class certification should be granted. *See Falcon*, 457 U.S. at 160, 102 S. Ct. at 2372.

Upon consideration of the pleadings, evidentiary submissions, and briefs, this court concludes that plaintiff's motion for class certification is due to be denied.

## I. SUMMARY OF FACTS

Defendant Waste Industries, Inc., is headquartered in Raleigh, North Carolina, and it primarily engages in the business of "collecting and hauling municipal solid waste from businesses and homes."[4] The company currently is divided into five divisions or regions.[5] Each division includes several branches, some of which are comprised of multiple facilities.[6]

During May of 1997, defendant purchased facilities in Ooltewah, Tennessee and Stevenson, Alabama.[7] A facility located in Dalton, Georgia was added in 1998.[8] The Ooltewah, Stevenson and Dalton facilities made up the business unit known as the "Ooltewah branch."[9] The Ooltewah branch was part of the "Tennessee Valley region."[10] At all times relevant to this case, defendant's requirements for the position of Residential Driver read as follows:

---

[4]Doc. no. 23, Exh. I at 17.

[5]*Id.* at 44-45.

[6]*Id.* at 25, 47, 49-50.

[7]*Id.* at 23, 33.

[8]*Id.* at 46.

[9]*Id.* at 23, 34, 49.

[10]*Id.* at 34.

**Education, Training, Experience and Licensing/Certification Requirements:**

High school diploma or GED; or one to three months related experience and/or training; or equivalent combination of education and experience. Demonstrate ability to follow written instructions and properly complete designated reports, records, etc.

Must possess a valid Commercial Drivers License (Class A or B). Must have a clean driving record.

Must pass DOT physical including drug screen, subject to random drug screen (Company Policy).

**Physical/Mental Demands**

Must be able to stand, walk, and be on feet for large portion of the day.

Must be able to use hands and fingers in order to handle or feel objects such as tools and controls.

Must be able to reach with hands and arms.

Must be able to stoop, kneel, crouch, or crawl.

Must be able to talk and hear.

Must be able to climb and balance.

Must be able to taste and smell.

Must be able to regularly lift and/or move up to 10 pounds, frequently lift and/or move up to 25 pounds, and occasionally lift and/or move up to 50 pounds.

Must be able to have the vision abilities that include close vision, distance vision, color vision, peripheral vision, depth perception, and the ability to adjust focus.

Must possess the ability to work in usually loud conditions.[11]

Plaintiff Gaynell Blalock received her commercial driver's license [CDL] (Class B) during September of 1999.[12] Around October 11, 1999, she drove to defendant's Stevenson facility and

---

[11] *Id.* Exh. M, exh. 9 at 3.

[12] *Id.* Exh. A, at 17-18, 26, 34-41.

obtained an application for a truck driver position, which she took home to complete.[13] That afternoon, plaintiff telephoned Bud Emmer, then site-supervisor of the Stevenson facility, and told him that she was going to submit her application the following day.[14] Plaintiff returned to the Stevenson facility the following day and gave her application to Linda Guess, the office manager.[15] Plaintiff has presented evidence that Emmer threw her application in the trash.[16] Emmer denies that he ever received an application from plaintiff.[17] Even so, for purposes of deciding plaintiff's motion for class certification, the court will assume that plaintiff filed an application for a position with defendant as a residential truck driver.[18]

After delivering her application to Linda Guess, plaintiff again telephoned Bud Emmer, to tell him that she had submitted her application. Plaintiff testified that, during this telephone conversation, Emmer told her that the job was rough and nasty, that it was "too hard and too rough for a woman," and "that a woman couldn't handle doing that kind of job."[19] Emmer denies making these comments.[20] After about a week, plaintiff called Emmer again, and he told her that he had hired a man for the job.[21]

---

[13] *Id.* at 116, 119.

[14] *Id.* at 122-23; Doc. no. 23, Exh. N at 25.

[15] *Id.* Exh. A at 124.

[16] *See id.* at 138-39.

[17] Doc. no. 23, Exh. N at 107.

[18] *In re Commercial Tissue Products*, 183 F.R.D. 589, 591 (N.D. Fla. 1998) ("[I]n ruling upon a motion for class certification, the substantive allegations contained in plaintiffs' complaint are accepted as true." (citing *In re Infant Formula Antitrust Litigation*, No. MDL 878, 1992 WL 503465 at *3 (M.D. Fla. Jan. 13, 1992); *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2nd Cir.1978))).

[19] *Id.* Exh. A at 130-31.

[20] *Id.* Exh. N at 106.

[21] *Id.* Exh. A at 132-33.

Plaintiff testified that she did not know whether any other qualified female drivers had ever applied with defendant.[22] She has no information of other qualified female drivers who had been deterred from submitting an application for employment with defendant, because of an opinion that females would not be hired.[23] Kristie Cagle, a former office employee of defendant, testified that she did not know of any other women who had applied for a driver position with defendant.[24]

The record contains evidence that a female was hired as a residential driver at one of defendant's facilities in the Tennessee Valley region during 1998.[25]

Plaintiff's expert, using 1990 census data for the area within defendant's Tennessee Valley region, found that there were 2,882 female truck drivers, and 6,687 female truck and bus drivers.[26] In a supplemental report, plaintiff's expert found that there were about 15,000 females holding Class A or Class B commercial driver's licences in the Tennessee Valley region during 2001.[27] Plaintiff's expert did not use the applicant logs maintained by defendant, because the expert found such logs to be tainted.[28] The information provided by plaintiff does not indicate how many of these female drivers meet defendant's job requirements as they existed in 1999.[29]

---

[22]*Id.* at 102-03.

[23]*Id.* at 105.

[24]*Id.* Exh. H at 21.

[25]Doc. no. 29, Exh. B, exh. 11 ¶ 6.

[26]*Id.* Exh. C at 8.

[27]*Id.* Exh. D at

[28]*See* Plaintiff's Brief in Support of Class Certification at 21-22 (citing record evidence of inaccurate maintenance of the applicant logs).

[29]Plaintiff submitted a job description from 2001. Doc. no. 24 Exh. R. This job description requires that applicants have two years of experience and that they pass a written and road test evaluation. *Id.* at 1. The description also requires applicants to be able to lift and move 100 pounds occasionally. *Id.* at 2. Such requirements would limit the population of qualified applicants – male and female – to a number less than that of drivers with CDLs..

## II. DISCUSSION

As previously noted, plaintiff has moved the court to certify a class composed of "all female applicants, potential applicants, and deterred applicants for employment at Waste Industries, Inc., . . . from September 20, 1999 to the present, who have been or will be adversely affected by the policies, practices, and procedures utilized by Waste Industries in the selection of truck drivers because of their sex."[30] Defendant argues that plaintiff's motion for class certification should be denied because plaintiff cannot meet the requirements of numerosity, typicality, and commonality of Fed. R. Civ. P. 23(a).

In response, plaintiff contends that "there are between 6,000 and 15,000 potentially qualified female applicants"[31] that "might have been prejudiced by the discriminatory practices challenged."[32] However, as set forth above, plaintiff's evidence does not identify any member of the proposed class except herself. The court finds that evidence of *potentially* qualified female applicants is not sufficient to demonstrate that "joinder is not an acceptable and viable alternative" for actually-qualified female applicants. *See Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 668 (M.D. Fla. 2001). Moreover, plaintiff has not established that her claims are typical of the proposed class, because she cannot identify any other, actual victims of discrimination. Under these circumstances, the court finds that certification of the proposed class is not proper. *See Nelson v United States Steel Corp.*, 709 F.2d 675, 679 (11th Cir. 1983); *Jamerson v. Board of Trustees of University of Alabama*, 662 F.2d 320, 325 (5th Cir. Unit B 1981).[33] In *Jamerson*, the former Fifth Circuit held:

---

[30]Doc. no. 22.

[31]Plaintiff's Brief in Support of Class Certification at 26 (citing Doc. no. 23, Exh. C at 8, and, Exh. D at 3).

[32]*Id.* (quoting *Falcon*, 457 U.S. 158 n.15).

[33]In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after 30 September, 1981.

> The district court refused to certify plaintiff Jamerson as class representative for others similarly situated at [defendant] University of Alabama. That decision is forcefully supported by the lower court's opinion and was justified based upon Jamerson's deposition filed in support of the request for certification. Jamerson was asked numerous questions about whether he knew any member of his race at the University of Alabama, Birmingham, who had not been granted tenure, who had been discriminated against in hiring, who had been discriminated against in nonretention, or who had in any way been discriminated against while on the faculty at the University. Jamerson was unable to tell of anyone who fell under that category. . . . *Upon his total failure to show any identification with or knowledge of other discriminatees who might make up a class, and upon failure to show that any members of the class had been discriminated against, the trial court was correct in not certifying Jamerson as a class representative.*

*Id.* (emphasis added). Likewise, in *Nelson*, the Eleventh Circuit Court of Appeals upheld the district court's denial of class certification because plaintiff had "produced no evidence that other class members were victims of discrimination." *Nelson*, 709 F.2d at 679.

Others courts have held that a plaintiff has not established the requirements of Fed. R. Civ. P. 23(a) for certifying a class, if the plaintiff has failed to identify any member of the class other than herself. *See Mazus v. Dept. of Transp. Com. of Pa.*, 629 F.2d 870, 876 (3d Cir. 1980); *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1062 (8th Cir. 1975);[34] *Davidson v. U.S. Steel Corp.*, 104 F.R.D. 1, 3 (W.D. Pa. 1984); *Leach v. Standard Register Co.*, 94 F.R.D. 621, 628-29 (W.D. Ark. 1982); *White v. Gates Rubber Co.*, 53 F.R.D. 412, 415 (D. Colo. 1971).

---

[34] The *Wright* court held: "Wright could not identify any person who had been subjected to the same or similar discriminatory treatment as he allegedly suffered. He could only speculate that approximately two hundred past and present employees and job applicants were involved. The typicality requirement of Rule 23(a)(3) obligates the class representative to at least demonstrate that there are other members of the class who have similar grievances." *Wright*, 524 F.2d at 1062 (citing *Green v. Missouri Pac. R.R.*, 62 F.R.D. 434, 436 (E.D. Mo. 1973), *rev'd on other grounds*, 523 F.2d 1290 (8th Cir. 1975); *Williams v. Matthews Co.*, 499 F.2d 819, 829 (8th Cir.), *cert. denied*, 419 U.S. 1027, 95 S. Ct. 507, 42 L. Ed. 2d 302 (1974)).

Therefore, based on the lack of evidence as to the identity of any other member of the plaintiff's purported class of female qualified applicants – actual or deterred, plaintiff's motion for class certification is due to be denied.

An appropriate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this __6th__ day of August, 2002.

_____
United States District Judge